IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SYLVESTER DEPRIEST,
       Plaintiff,

v.                                                          Civil Action No. 3:21cv624 (DJN)

DR. J. CANE, *et al.*,
       Defendants.

## **MEMORANDUM OPINION**

Sylvester DePriest, a former Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action in which he alleges that Dr. James Cane and Nurse Practitioner Tarasova ("Defendants") denied him adequate medical care in violation of the Eighth Amendment during his confinement in the Henrico Regional Jail East.[1] Specifically, DePriest raises the following claim:

> Claim One:    Defendants denied DePriest adequate medical care for his knee injury by delaying his receipt of surgery.

DePriest requests monetary damages. (ECF No. 3, at 7.) The matter comes before the Court on the Motion for Summary Judgment filed by the Defendants. (ECF No. 40.) Despite the provision of notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), DePriest has not filed a response. For the reasons set forth below, the Motion for Summary Judgment, (ECF No. 40), will be GRANTED.

---

[1]    The Court corrects the spelling of the Defendants' names as reflected in their submissions. The Court employs the pagination assigned by the CM/ECF docketing system. The Court also corrects the spelling, capitalization, and punctuation in the quotations from the parties' submissions.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th

Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submit the declaration of Michael Smithers, (ECF No. 41-1), who attests that the hundreds of pages of medical records attached, (ECF No. 41-2), are true and correct; the declaration of Defendant Inna Tarasova N.P., (ECF No. 41-3); and, the declaration of Defendant James H. Cane, M.D., (ECF No. 41-4).

At this stage, the Court must assess whether DePriest "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. DePriest failed to respond to the Motion for Summary Judgment. DePriest also failed to swear to the contents of his Complaint under penalty of perjury.[2] DePriest's failure to present any evidence to counter Defendants' Motion for Summary Judgment permits the Court to rely solely on Defendants' submissions in deciding the Motion. *See Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3) ("The Court need only consider the cited materials . . . .").

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of DePriest.

---

[2] The Court notes that even though it is not evidence, DePriest's recitation of the alleged facts underlying his claims is generally consistent with the medical record put forth by Defendants.

## II.     UNDISPUTED FACTS

DePriest was an inmate in the Henrico Regional Jail East from January 4, 2019, until he was transferred to a different facility in May of 2021, and ultimately was released in August 2022. (ECF No. 41-2, at 3; ECF No. 33, at 1.) Nurse Tarasova explains that if an inmate is not feeling well, he can submit an inmate request that is sent to a nurse for review. (ECF No. 41-3 ¶ 3.) A nurse then determines whether the medical complaint requires further assessment by either the jail physician or nurse practitioner, such as Dr. Cane or herself. (*Id.*) Neither Dr. Cane nor Nurse Tarasova personally handles the intake of inmate sick requests. (*Id.* ¶ 4.)

On October 3, 2019, DePriest injured his left knee while he was playing basketball. (ECF No. 41-4 ¶ 3.) DePriest saw Dr. Cane that day for left knee pain. (*Id.*) Dr. Cane noted that DePriest had a slight limp. (*Id.*) When Dr. Cane informed DePriest that it was protocol to place him in the Restrictive Housing Unit because he could not be housed in general population with a limp, DePriest "began to jog in place and stated that he was 'fine.'" (*Id.*) Dr. Cane placed DePriest on work restriction for one week, and he was not allowed recreation hour for one month. (*Id.*) Medical provided DePriest with ice for forty-eight hours and 400 mg of Ibuprofen for five days. (*Id.*) Dr. Cane noted that DePriest left his medical appointment with no limp. (*Id.*)

On October 6, 2019, DePriest submitted a sick request for his knee. (ECF No. 41-2, at 96.) The following day, DePriest signed the Informed Refusal of Medical/Mental Health Services and indicated on the form that he would "wait the 1 week to see if it [got] better." (*Id.* at 78.)

Dr. Cane saw DePriest again on October 10, 2019, for his continued complaints of left knee pain. (ECF No. 41-4 ¶ 4.) Dr. Cane referred DePriest for an MRI and for an appointment

4

with an outside orthopedic doctor. (*Id.*) Dr. Cane examined DePriest and continued the medication, placed him on work restriction for one week, (*id.*), and issued DePriest a knee brace, (ECF No. 42-2, at 4). Dr. Cane saw DePriest again on October 24, 2019, for left knee pain. (ECF No. 41-4 ¶ 5.)

On October 31, 2019, DePriest saw an outside physician and had an MRI. (*Id.* ¶ 6.) While awaiting the results of the MRI, DePriest was treated by medical providers at the jail and was prescribed 800 milligrams of Ibuprofen during that time. (*Id.*; ECF No. 41-2, at 98, 318.) On November 26, 2019, an orthopedist at the Tidewater Physicians Multispecialty Group reviewed the MRI and diagnosed DePriest with "a partial tear of the anterior cruciate ligament (ACL)," (ECF No. 41-2, at 90; ECF No. 91-4 ¶ 7), and "some lateral pain from the bone bruise," (ECF No. 41-2, at 91). Dr. Cane explains that "[t]here are varying degrees of tears. Low grade tears are normally treated conservatively with exercises, physical therapy and then injections. Generally, partial tears do not require surgery." (ECF No. 41-4 ¶ 6.) Dr. Cane explained that the orthopedic doctor determined that DePriest's knee injury "was not an emergency injury and did not require surgery." (*Id.* ¶ 8.) The orthopedic doctor "recommended waiting 2 months to see if symptoms resolve" and then he and DePriest could "discuss again the pros and cons of anterior cruciate ligament reconstruction." (ECF No. 41-2, at 91.)

In early March, DePriest submitted two inmate requests complaining about ongoing knee pain. (ECF No. 41-4 ¶ 9.) Nurse Tarasova saw DePriest on March 13, 2020. (ECF No. 41-3 ¶ 5.) DePriest explained that he injured his knee while playing basketball in October 2019, that he had been seen by an orthopedist, and requested to have ACL surgery. (*Id.*) DePriest indicated to Nurse Tarasova "that he continued going to the gym and working out after the injury because he wanted to stay in shape, but he could not jump or run." (*Id.*) Nurse Tarasova noted

5

that DePriest's gait was normal, his knee had a normal shape, and that his range of motion was also normal. (*Id.*) Nurse Tarasova provided DePriest with knee exercises and instructed him to avoid activities that may cause him pain. (*Id.*) Nurse Tarasova also requested the office notes from DePriest's orthopedist appointment. (*Id.*) At this same visit, DePriest was referred for an appointment with an orthopedic doctor. (ECF No. 41-4 ¶ 9.) However, because of the COVID–19 pandemic, access to outside providers was limited to emergencies, so DePriest was unable to be seen by an orthopedic doctor at that time. (*Id.*)

From April 11, 2020, until November 20, 2020, DePriest requested and received treatment at the jail for his knee pain. (*Id.* ¶ 10.) Dr. Cane and other medical staff continued to monitor and treat DePriest's knee injury including the administration of pain medication. (*Id.*; ECF No. 41-2, at 4.)

On August 3, 2020, DePriest was again referred to an outside orthopedic physician. (ECF No. 41-4 ¶ 10.) Because of the ongoing COVID–19 pandemic, however, access to outside facilities remained limited, and DePriest was unable to be seen at that time. (*Id.*)

On December 16, 2020, DePriest was sent out for an x-ray at the Sentara Williamsburg Regional Medical Center. (*Id.* ¶ 11.) "[N]o meniscus tear or ligamentous injury was identified" on the x-ray. (*Id.*)

From January 2, 2021, until February 25, 2021, DePriest submitted inmate requests for treatment of his knee and requested surgery. (*Id.* ¶ 12.) Dr. Cane continued to treat DePriest and monitor his knee. (*Id.*) On February 25, 2021, DePriest had a telehealth appointment to discuss his surgical options. (*Id.*) At that time, surgery was scheduled for March 22, 2021. (*Id.*)

On March 22, 2021, DePriest had left ACL reconstruction surgery with Dr. Loughran an orthopedist at Virginia Commonwealth University Sports Medicine ("VCU"). (*Id.* ¶ 13; ECF

No. 41-2, at 53.) The day after his surgery, DePriest was transferred back to the jail where he remained in the infirmary to recover until May 17, 2021. (*Id.* ¶ 13.) Dr. Cane treated and monitored DePriest while he recovered in the infirmary. (*Id.*) Nurse Tarasova examined DePriest on April 23, 2021. (ECF No. 41-3 ¶ 6.) Nurse Tarasova noted that the scar on DePriest's knee did not have any redness or drainage. (*Id.*) Nurse Tarasova instructed jail medical staff to keep the wound clean and covered. (*Id.*)

Nurse Tarasova saw DePriest twice more during his detention in the Henrico Regional Jail East on April 30, 2021 and May 6, 2021. (*Id.* ¶¶ 7–8.) Nurse Tarasova noted in the first appointment that DePriest's blood pressure was normal, but on the May 6 visit, his blood pressure was slightly elevated. (*Id.*) Nurse Tarasova noted to recheck his blood pressure in two weeks. (*Id.* ¶ 8.) DePriest was transferred out of the Henrico Regional Jail East on or around May 18, 2021. (*See* ECF No. 42-2, at 3 (reflecting end of medical records).)

### III. ANALYSIS

#### A. Fourteenth Amendment Principles

From DePriest's submissions, it is unclear whether he was a convicted felon at the time of his complaints or a pretrial detainee. DePriest alleges that Defendants' actions violated the Eighth Amendment, and Defendants also address his claims as one brought under the Eighth Amendment. However, because DePriest was housed in the Henrico Regional Jail East at the time of his complaints, it is highly likely that DePriest was a pretrial detainee, and therefore, the Court analyzes his claim under the Fourteenth Amendment. *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)); *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021).[3]

---

[3] Defendants are warned that, in the future, they must address the nuances of these principles or else the Court may summarily dismiss any dispositive motion. However, because

7

"The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870. Therefore, "a pretrial detainee [demonstrates] a violation [of the Fourteenth Amendment] at least where 'he shows deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment." *Mays*, 992 F.3d at 300 (quoting *Martin*, 849 F.2d at 870).

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must [demonstrate] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or [if it] is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to demonstrate that a particular defendant acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson*

---

DePriest appears to have lost interest in pursuing this litigation, and the analysis is similar for claims of denial of adequate medical care whether under the Eighth or Fourteenth Amendment, *Moss*, 19 F.4th at 624 (4th Cir. 2021) (citation omitted); *Mays*, 992 F.3d at 300, the Court proceeds to the merits.

8

*v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate both that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their

9

choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . ." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974).

### B.     Claim One

DePriest generally contends that Defendants denied him adequate medical care for his left knee injury. DePriest indicates that he wrote "medical sick call slips and blue note[s] from January 4, 2020 to April 2021 complaining about the pain in [his] knee." (ECF No. 3, at 5.) DePriest contends that Defendants "failed [him] all around." (*Id.* at 6.) It is not entirely clear why DePriest believes Defendants violated his rights with respect to his knee injury. DePriest indicates, and the record clearly establishes, that he received a great deal of treatment for his knee including an MRI and several referrals to an orthopedist. Although DePriest never explicitly states so, DePriest clearly disagrees with the timing and course of care he received, both of which fail to state a claim of deliberate indifference.

As a preliminary matter, DePriest's ACL tear is certainly a serious medical need. Nevertheless, the record makes clear that Defendants did not act with indifference to DePriest's complaints or his injury. Defendants first attempted to treat DePriest's injury with ice, rest, work limitations, pain medication and prescribed a knee brace. When DePriest continued to complain of pain and physical limitations, Dr. Cane referred DePriest for an appointment with an outside orthopedist and an MRI. (ECF No. 41-4 ¶ 3.) Although the MRI showed a partial tear to the ACL, the orthopedic doctor discussed the injury with DePriest. Because it was not an

emergency, the doctor recommended that DePriest wait at least two months to see if the tear and the symptoms would resolve on their own, and he explained to DePriest that if the injury did not heal, they could discuss the pros and cons of surgery at that time. Dr Cane explains that there are differing degrees of tears and often partial tears will heal on their own without surgery. (*Id.* ¶ 6.) During this time, Defendants addressed DePriest's complaints with pain medication and provided knee exercises and warned him to avoid exercises that would exacerbate his condition. (ECF No. 41-2, at 4; ECF No. 41-3 ¶ 5.)

When DePriest continued to complain of pain and to request surgery, Defendants attempted to refer DePriest to a second orthopedic appointment in March of 2020 and again in August of 2020. Through no fault of the Defendants, the COVID–19 pandemic delayed DePriest's appointment with an orthopedist and his surgery. (ECF No. 41-4 ¶ 10.) In December of 2020, Defendants sent DePriest out for an x-ray, which did not show further injury. (*Id.* ¶ 11.) DePriest was able to have a telehealth appointment in February of 2021, and he ultimately had ACL surgery in March of 2021. (*Id.* ¶¶ 12–13.) Nurse Tarasova and other medical staff then provided him with follow-up care for several months after his surgery. The record shows that Defendants did not disregard an excessive risk to DePriest's health or safety necessary to show a constitutional violation. It appears that, at most, DePriest disagreed with the treatment plan prescribed by both the orthopedist and the Defendants. However, DePriest was not entitled to the medical care of his choosing. *Wright*, 766 F.2d at 849 (citations omitted); *Bowring*, 551 F.2d at 48 ("disavow[in]g any attempt [of the Court] to second-guess the propriety or adequacy of a particular course of treatment"). DePriest fails to show that Defendants were deliberately indifferent to his knee injury.

DePriest's main complaint appears to be that Defendants somehow delayed medical care for his torn ACL. The record reflects that is not true. "Where an inmate's inadequate medical care claim is predicated upon a delay in care, the inmate must also establish that the delay in the provision of medical care "resulted in substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *id.* at 754 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)) (identifying this additional requirement of the objective prong); *see also Webb v. Hamidullah*, 281 F. App'x 159, 166–67 n.13 (4th Cir. 2008) (citing cases for "substantial harm" requirement). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citations omitted); *see Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (explaining that a medical need is serious "if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss'").

First, DePriest fails to demonstrate that Defendants caused the delay of his ACL surgery, much less that they intentionally denied or delayed his access to care. *Estelle*, 499 U.S. at 104–05. DePriest first saw Dr. Cane for his knee on October 6, 2019, three days after his injury. (ECF No. 41-4 ¶ 3.) By October 10, 2019, when conservative treatments at the jail failed to address DePriest's complaint of knee pain, Dr. Cane referred him to an orthopedist and for an MRI. (*Id.* ¶ 4.) DePriest saw an orthopedist and had an MRI on October 31, 2019. The orthopedist discussed DePriest's MRI results with him on November 26, 2019. Although the MRI showed a partial tear of his ACL on his left knee, the orthopedist determined that there was no need for emergency surgery and recommended waiting two months to see if the tear and symptoms would heal on their own. (*Id.* ¶ 6.) When DePriest continued to complain of pain and

12

request surgery after a few months passed, Defendants referred DePriest to a second orthopedic appointment. However, that referral was in March of 2020, right as the COVID–19 pandemic began, and non-emergent care was limited. Defendants attempted to refer DePriest to an orthopedist again in August of 2020, but they were faced with the same limitations due to COVID–19. (*Id.* ¶ 10.) The uncontroverted evidence shows that these delays were beyond Defendants' control. On February 25, 2021, DePriest's surgery was scheduled after a telehealth visit. Then on March 22, 2021, DePriest underwent ACL surgery and received follow-up care for several months after his surgery. (ECF No. 41-4 ¶¶ 12–13.) In sum, DePriest fails to show that Defendants caused the delay in his receipt of surgery.

Moreover, DePriest also fails to demonstrate that any delay in scheduling surgery for his ACL caused him substantial harm. DePriest complains that his "ACL had to be removed because it had streaded [sic] so [he] had to ha[ve] the cadaver surgery where they [took his] whole ACL out and put a dead man['s] ACL in [his] leg." (ECF No. 3, at 6.) DePriest further complains that, "when [he] wake[s] up [he experiences] pain, [he] can't run, jump yet [and doesn't] know if [he] will ever be able [to] again." (*Id.*) Certainly, DePriest's ACL surgery and his resulting recovery were unpleasant and uncomfortable. However, DePriest fails to show that the type of surgery and recovery period required stemmed from anything other than DePriest's initial injury to his ACL. Stated another way, DePriest puts forth no evidence that his delay in receiving surgery standing alone caused him substantial harm. And, although DePriest contends that the surgery left him with limited mobility, he fails to offer any evidence that an earlier surgery would have yielded a different result. Accordingly, with respect to his complaints about

the delay in receiving surgery, DePriest fails to satisfy either the objective or subjective prong for an Eighth or Fourteenth Amendment claim.[5]

In sum, DePriest fails to demonstrate that Defendants were deliberately indifferent to his knee injury. Claim One lack merits and will be DISMISSED.

## IV. CONCLUSION

The Motion for Summary Judgment, (ECF No. 29), will be GRANTED. DePriest's claim will be DISMISSED. The action will be DISMISSED.

Let the Clerk file a copy of this Memorandum Opinion electronically and send a copy to Plaintiff.

An appropriate Final Order shall issue.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: June 7, 2023

---

[5] To the extent that DePriest complains that after ACL surgery he still experienced pain and physical limitations, he fails to demonstrate a constitutional violation. "It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). The Eighth Amendment does not require "prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment." *Id.* So long as medical staff respond reasonably to an inmate's complaints of pain, the inmate's Eighth Amendment rights are not violated. *Brown*, 240 F.3d at 389–90. Because the reasonableness of any such response usually calls for a medical judgment, "[w]hether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes*, 95 F.3d at 592; *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("[T]he decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" (quoting *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks omitted))). This is clearly not such an extreme circumstance that judicial interference is warranted.